In the Matter of the Claim of ALBERT J. MESZAROS, Respondent, against MAX GOLDMAN et al., Appellants, and LOUIS EFROS PLUMBING AND HEATING Co. et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.

In the Matter of the Claim of EMANUEL BRAUNSTEIN, Respondent, against GENERAL MARINE REPAIR et al., Respondents, and INDEPENDENT SCRAP IRON et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued April 21, 1954; decided July 14, 1954.

*Ralph S. Stowell* and *Joseph D. Edwards* for appellants in first above-entitled proceeding. The award here appealed from is in error and contrary to the provisions of subdivision 6 of section 15 of the Workmen's Compensation Law. (*Matter of Fusco* v. *City of New York,* 256 App. Div. 862, 280 N. Y. 826; *Matter of Zuk* v. *McGuire Bros.,* 277 App. Div. 956, 301 N. Y. 817.)

*Arthur B. Erenstoft* for appellants in second above-entitled proceeding. The award appealed from is in error. (*Matter of Zuk* v. *McGuire Bros.,* 277 App. Div. 956, 301 N. Y. 817; *Matter of Anderson* v. *Babcock & Wilcox Co.,* 256 N. Y. 146.)

*Nathaniel L. Goldstein, Attorney-General (Daniel Polansky, Wendell P. Brown* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent in first above-entitled

proceeding. The award appealed from was proper and did not contravene the provisions of subdivision 6 of section 15 of the Workmen's Compensation Law. (*Matter of Zuk* v. *McGuire Bros.*, 277 App. Div. 956, 301 N. Y. 817; *Matter of Berzin* v. *E. J. Elec. Installation Co.*, 262 App. Div. 980; *Matter of McCann* v. *McCormack's Garage*, 203 App. Div. 387; *Birkel* v. *Thompson-Starrett Co.*, 206 App. Div. 640; *Matter of Lipco* v. *White Wrecking Co.*, 224 App. Div. 801; *Matter of Kaminsky* v. *Socony-Vacuum Oil Co.*, 275 App. Div. 1013, 301 N. Y. 528; *Matter of Anderson* v. *Babcock & Wilcox Co.*, 256 N. Y. 146.)

*Ralph S. Stowell* and *Joseph D. Edwards* for Friendly Service Station and another, respondents in second above-entitled proceeding. The Workmen's Compensation Board has properly found the provisions of subdivision 6 of section 15 of the Workmen's Compensation Law applicable herein. (*Matter of Foyt* v. *Daigler*, 236 App. Div. 420; *Matter of Kerchik* v. *La Fontaine Novelty Co.*, 225 App. Div. 437; *Matter of Fusco* v. *City of New York*, 256 App. Div. 862, 280 N. Y. 826; *Matter of Zuk* v. *McGuire Bros.*, 277 App. Div. 956, 301 N. Y. 817; *Matter of Anderson* v. *Babcock & Wilcox Co.*, 256 N. Y. 146.)

DESMOND, J. The question of law common to both these appeals is this: when a worker suffers two or more separate accidental injuries with resulting " temporary partial " disabilities, both compensable under the Workmen's Compensation Law, and the board finds that the ultimate disability was caused in part by one or more of the earlier accidents, but the earnings of the claimant, after, and as decreased by, the latest accident, are nonetheless higher than they were at the time of the earlier contributing accident or accidents, is the latest award to be paid by the employer and carrier as of the time of that latest accident or is it to be charged in part against the earlier employer and carrier (or earlier employers and carriers) although, as against claimant's earnings prior to the time (or times) of the earlier contributing accident (or accidents), his earnings subsequent to the latest accident show no diminution? That question seems to have had contradictory answers, by the Appellate Division, in these two cases. We think that. the statutory language and the apparent plan of the statute, and

a fair reading thereof, call for the second of those alternative answers.

There is no need for a close analysis of the facts in the two cases before us. Claimant Meszaros had two compensable disablements, one in 1942 and the other in 1945. The board, on adequate proof, held that one third of his disability, after 1945, was due to the 1942 accident, and two thirds to the 1945 accident. Claimant's earnings were found to have been: $19.23 per week before the first mishap, $59.90 weekly just before the second one; and (we will refer to this item again at a later point in this opinion) after the 1945 accident, it was found, his average wages were "reduced to a sum which would entitle him to a compensation rate of $12 [per week]". The board, therefore, ordered the 1942 employer and carrier to pay Meszaro $4 per week, and ordered their 1945 opposite numbers to contribute $8 per week.

Braunstein, claimant in the second of our cases, had seven different compensable accidental injuries: three in 1946 and 1947 while he worked for respondent Friendly with respondent Century as insurance carrier; one in early 1947 (respondent General was then the employer and respondent Bankers the carrier) and three more in 1947, while Braunstein was working for appellant Independent (appellant Public Service was Independent's carrier). Here the finding (not disputed) was that the first of those seven accidents caused 25% of the final disability, and each of the other six accidents caused 12½% thereof. Just before the first series of three injuries, Braunstein's wages were $65 per week; between that time and the fourth occurrence, he earned $55.20 per week, and while working for the latest employer (Independent) before the latest disablement, his pay was $100 per week. Thus he lost (as the immediate result of the seventh injury), the difference between $100 and $65.57 per week (the amount he earned after the last accident) or $34.43, and so his award, being two thirds of that latter amount (Workmen's Compensation Law, § 15, subd. 7) was $22.95 per week. Although the board made a finding (as we read it) that Braunstein's disablement after the latest (September 5, 1947) accident was caused by all seven accidents, it made the $22.95 award against the latest employer and carrier, only, apparently

because claimant's earnings of $65.57 after September 5, 1947, were higher than they had been at or before any of the six earlier accidents.

It is settled law (*Matter of Anderson* v. *Babcock & Wilcox Co.*, 256 N. Y. 146, 149) that an award should be apportioned when the accidental injury which is the occasion for that award is in part caused by an earlier compensable accident. Subdivision 5 of section 15 of the act says that " In case of temporary partial disability resulting in decrease of earning capacity, the compensation shall be two-thirds of the difference between the injured employee's average weekly wages before the accident and his wage earning capacity after the accident ". Subdivision 6 of that same section, fixing maxima and minima for awards, imposes a condition that " In no event shall compensation when combined with decreased earnings * * * exceed the amount of wages which the employee was receiving at the time the injury occurred." Reading together those rules of law, we conclude that, in circumstances like those of the two cases presently on appeal, the latest awards should be charged proportionately against all the employers-carriers. Only thus can fairness be accomplished. We read the word " injury " in subdivision 6 (*supra*) as referring, necessarily, to the latest " injury " when there have been two or more. So read, the above-quoted language of subdivision 6 means no more than this: total compensation, for disability caused by several compensable accidental injuries, plus earnings after the latest injury, cannot exceed earnings just before the latest injury. If any other interpretation be made of subdivision 6, the anomalous result will follow that the employer-carriers, as of the time of earlier contributing accidents, will be relieved of all money contributions, simply because the claimant's wages have been on the rise. Such a construction can be, and should be, avoided (see, illustratively, *Matter of Anderson* v. *Babcock & Wilcox Co.*, *supra*; and *Matter of Zuk* v. *McGuire Bros.*, 277 App. Div. 956, motion for leave to appeal denied 301 N. Y. 817).

In *Matter of Meszaros*, there is another possible answer, also, to appellant's contentions, and another basis for affirming the award. That claimant's earnings, of about $35 per week, after the second of his injuries, came from his business, or self-

employed occupation, of vending soap. It is conceded that the *Meszaros* case record does not show how much of this $35 represents earnings from his own efforts, and how much is in the nature of business profits or investment income. Thus the *Meszaros* record does not show that the $12 weekly award plus *present wage earning* capacity exceeds the wages earned at the time of either the first or the second accident (see *Matter of Kaminsky* v. *Socony-Vacuum Oil Co.,* 275 App. Div. 1013, affd. 301 N. Y. 528).

In the *Meszaros* case, the order should be affirmed, with costs

In the *Braunstein* case, the order should be reversed, without costs, and the matter remitted to the Workmen's Compensation Board for further proceedings not inconsistent with this opinion.

VAN VOORHIS, J. (dissenting). These cases involve a single question of law, viz., in event of successive industrial accidents each contributing to the temporary partial disability of a claimant, are prior employers liable if the decreased earnings after the latest accident exceed the full wages paid by the prior employers at the times of the earlier accidents? In the *Meszaros* case the claimant sustained two industrial accidents while employed by different employers, one in 1942 and the other in 1945. Both are alleged to have resulted in back strain. After the second accident, claimant earned more in his disabled condition than the amount of his full weekly wages at the time of his first industrial accident.* In the *Braunstein* case the claimant sustained seven industrial accidents, also alleged to have resulted in back strain. He earned more in his disabled condition after the seventh accident than the full amount of his weekly wages at each of his first four accidents. In both cases, the Workmen's Compensation Board found that every accident contributed to some extent to the partial disability from which the claimant was found to have suffered after the last industrial accident.

Subdivision 6 of section 15 of the Workmen's Compensation Law, defining " Maximum and minimum compensation for disability ", states: " In no event shall compensation when com-

---

* At least the Workmen's Compensation Board so assumed in rendering its decision which is under review. This circumstance is not questioned by respondent.

bined with decreased earnings or earning capacity exceed the amount of wages which the employee was receiving at the time the injury occurred.''

In both of these cases an employer and carrier at the time of an earlier accident contend that by reason of this statute no liability attaches to them due to the circumstance that the employee in his partially disabled condition after the last accident, nevertheless earned more than his total wages at the time of the earlier accident. The later employers and carriers insist that the amount of wages which the employee was receiving '' at the time the injury occurred '', as used in this statute, refers to the time of the latest injury, notwithstanding that the injured employee was not then working for the employer sought to be held liable. Under such a construction this limitation would seldom apply, inasmuch as the measure of the compensation payable for a temporary partial disability would be taken at two thirds of the wages which the employee was receiving at the time of the latest accident (Workmen's Compensation Law, § 15, subd. 5).

It seems to me that the Workmen's Compensation Board and the Appellate Division correctly decided the *Braunstein* case. It should be noted that the determination of this question does not affect the amount of compensation payable to the claimant. The controversy is between the different employers and their insurance carriers. Braunstein earned $100 per week at the time of his seventh back strain, and $65.57 afterward. That resulted in a compensation award of two thirds of that difference of $34.43, or a total of $22.95 a week to the injured man which was payable entirely by the employer (and insurance carrier) for whom he worked at the time of the last three of his accidents. This result is claimed to be inconsistent by the appellants in the *Braunstein* case, in view of the circumstance that the board held that the back strain which resulted in this reduction of $34.43 per week in Braunstein's earnings was caused 25% by his first accident and 12½% by each of the other six accidents. Consequently it is sought to apportion the entire workmen's compensation payable in consequence of his last accident as the precipating cause, upon the prior employers and their carriers in proportion to the extent to which it was thus thought that the prior accidents contributed to his **final condition**. Such

a procedure would be indicated by *Matter of Anderson* v. *Babcock & Wilcox Co.* (256 N. Y. 146); *Matter of Chiodo* v. *Newhall Co.* (254 N. Y. 534); *Matter of Thomas* v. *Royal Dairy* (270 App. Div. 688), and *Matter of Zuk* v. *McGuire Bros.* (277 App. Div. 956) were it not for the limitation contained in the paragraph which has been quoted from subdivision 6 of section 15. The mere circumstance that the accident which is the precipitating cause of claimant's temporary partial disability would not have had this effect unless claimant had previously had a weak back, is not regarded by the courts as a ground on which to defeat or reduce the amount awarded against an employer (*Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522; *Matter of Masse* v. *Robinson Co.*, 301 N. Y. 34; *Matter of Caulkins* v. *General Motors Acceptance Corp.*, 254 App. Div. 789; cf. *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81). The Legislature found no difficulty in discovering words to express its intent when subdivision 8 of section 15 was enacted, concerning '' Disability following previous permanent physical impairment.'' The existence of liability for compensation under such circumstances had been well established, when subdivision 8 was adopted to enable an employer who was compelled to pay compensation in the full amount in the first instance to recover a part of it from a special disability fund created by this subdivision. Unless the employee's predisposition to injury be of the nature defined in subdivision 8, however, the entire consequences are visited upon the employer at the time when the industrial accident occurs, and this is true notwithstanding that subdivision 7, relating to '' Previous disability '', expressly provides that '' The fact that an employee has suffered previous disability or received compensation therefor shall not preclude him from compensation for a later injury nor preclude compensation for death resulting therefrom; but in determining compensation for the later injury or death his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury, provided, however, that an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability except as hereinafter provided in subdi-

vision eight of this section.'' Inasmuch as '' disability '' here refers to impairment of earnings or earning capacity, and does not refer to mere residual weakness consequent upon some previous injury, it follows that subdivision 7 of section 15, in an instance such as this, calls for primary payment of the entire award for temporary partial disability by the later employer and insurance carrier. The case law has made it possible to prorate the compensation among the various employers for whom a claimant has worked while sustaining successive industrial accidents that have contributed to an ultimate disability, but nothing in the statute or the case law prevents a claimant from recovering the entire amount of an award from the final employer if, for any reason, earlier employers are unable to contribute or are prevented by statute from contributing. Thus, it may be assumed that, if an earlier employer had become insolvent or died, the recovery of an award for the final injury would not be prevented or diminished by reason of the circumstance that it had been rendered impossible to collect any portion from an earlier employer.

In the instant situation, there is no inconsistency, as has been stated, in exempting the employers of Braunstein at the times of his first four industrial accidents from payment of contribution, due to the circumstance that subdivision 6 of section 15 precludes it.

The effect of subdivisions 6, 7 and 8 of section 15 is to visit the consequences of a subsequent accident to which the employee is predisposed by his physical condition upon the employer in whose hire he has been working at the time when the industrial accident occurred, notwithstanding any physical weakness which may have contributed to the injury, unless the employee was actually suffering from a previous disability (meaning impairment of earnings or earning capacity) at that time. If the employee suffered from such previous impairment of earnings or earning capacity at the time of the later accident, then subdivision 7 prevents the then employer from being rendered liable '' in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability '', unless it be a case where a contribution may be had from the special fund. In the latter instance, the employer is rendered liable in the first place for the entire compensation,

but is entitled to be reimbursed from the special fund to the extent permitted by subdivision 8.

This statutory scheme contemplates that, where an employee is not suffering from previous disability, i.e., impairment of earnings or earning capacity, the employer in whose employment the accident occurs shall pay the entire award. If impairment of health or physique was caused by a prior industrial accident, even without residual disability, the courts have engrafted an exception upon this rule in the interest of justice requiring that prior employers shall contribute in proportion to the extent to which the final disability arising from the last accident may be traced to these earlier accidents. The Legislature has placed a limitation upon such contributions, however, by the sentence which has been quoted from subdivision 6 that " In no event shall compensation when combined with decreased earnings or earning capacity exceed the amount of wages which the employee was receiving at the time the injury occurred."

It may well be that this sentence was conceived in the thought that it would refer to the condition existing in the case of a single industrial accident where the claimant had been working but for one employer. If that was the policy of the Legislature in connection with a single accident, the reasons for maintaining it appear to be greater in event of successive industrial accidents. The language would certainly appear to refer to the time of the injury in the employment of the employer against whom liability is being asserted. The object was to limit the contingent liabilities of employers. It would fail of that effect if the words " at the time the injury occurred " be construed to refer to any subsequent injury which an employee might later sustain in his lifetime. The liability imposed by such decisions as *Matter of Anderson* v. *Babcock & Wilcox Co.* (*supra*) may be very far-reaching. It is possible to trace the causes of a later industrial accident back over a long interval of time to some injury that occurred in a prior employment, when a different wage scale prevailed. It is established, and the Legislature is presumed to have understood, that such a remote and contingent liability is incurred by every person, firm or corporation that employs anyone in a covered employment. If the intention of the Legislature in enacting this limitation in subdivision 6 of section 15 was, as it appears to have been, that in

event of a single industrial accident the employer shall not be charged with the consequences if the reduced earnings or earning capacity exceeds the amount of wages which the employee was receiving at the time the injury occurred, then it is not less likely to have been the legislative intention to preclude such a consequence if in after years the claimant, while working for somebody else in an era when prevailing wage rates are disproportionate to those existing when he was in the former employ, sustains an aggravation of the previous condition while working for another.

In accordance with this reasoning, the Appellate Division in the *Braunstein* case correctly said: " We think the board was bound to follow subdivision 6 of section 15, and that it was within its province to make the award here questioned." (281 App. Div. 1059, 1060.)

Several other sections of the Workmen's Compensation Law support this conclusion. Where the word " injury " is employed in the language of this act, it is ordinarily in the context of an " injury arising out of and in the course of the employment " (§ 10). Section 14 directs that " the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation or death benefits, and shall be determined as follows: " The formulae for computing the amount of workmen's compensation are thereupon defined in phraseology commencing in this manner: " If the injured employee shall have worked in the employment *in which he was working at the time of the accident,* whether for the same employer or not, during substantially the whole of the year immediately preceding " (italics supplied). The words " injury " and " accident " are used indiscriminately throughout the Workmen's Compensation Law, in fact subdivision 7 of section 2 defines injury as including " only accidental injuries ". It is evident that when the Legislature employed the language limiting liability for disability, which appears in subdivision 6 of section 15, that " In no event shall compensation when combined with decreased earnings or earning capacity exceed the amount of wages which the employee was receiving at the time the injury occurred ", it referred to the injury resulting from an accident that arose out of and during the

course of the employment for the employer against whom liability is asserted. The reasoning of the Appellate Division in the *Meszaros* case (differing from its reasoning in the *Braunstein* case) finds little support in the statute that " In a pragmatical sense therefore his injury, as the term is used in the statute, occurred at the time of the second accident." The Legislature, as it seems to me, was thinking of no such thing. It clearly intended, and expressed the intention, that employers should not be subjected to contingent liabilities for the payment of workmen's compensation by reason of industrial accidents which they might sustain in later years, in amounts exceeding their entire earnings when the earlier accident or accidents occurred, and that in event of partial disability there should be no contingent liability if the reduced earnings exceeded the wages received at the time of the earlier accident. This accords with the established rule that in determining the amount of compensation which a claimant shall receive, the basis is the average weekly wage of the employee at the time of the injury (*Matter of Lerner* v. *Jakwall Embroidery Co.,* 203 App. Div. 381; *Matter of Kerchik* v. *La Fontaine Novelty Co.,* 225 App. Div. 437, and *Schwartz* v. *Ebenstein,* 236 App. Div. 420).

The order of the Appellate Division affirming the decision and award of the Workmen's Compensation Board in the *Braunstein* case should be affirmed, with costs, and its order affirming the award of the Workmen's Compensation Board in the *Meszaros* case should be modified so as to render the claim payable exclusively by the second employer, with costs to the appellants.

In the *Meszaros* case:

CONWAY, DYE, FULD and FROESSEL, JJ., concur with DESMOND, J.; VAN VOORHIS, J., dissents in opinion in which LEWIS, Ch. J., concurs.

Order affirmed.

In the *Braunstein* case:

CONWAY, DYE, FULD and FROESSEL, JJ., concur with DESMOND, J.; VAN VOORHIS, J., dissents in opinion in which LEWIS, Ch. J., concurs.

Order reversed, etc.