Fuld, J.
The appeal, here by our permission, involves the reach of our decision in Matter of Meszaros v. Goldman and Matter of Braunstein v. General Mar. Repair (307 N. Y. 296) and calls upon us to decide whether, in the case of successive industrial accidents or disablements resulting from occupational disease, an award may be made against the last employer, based not on wage-earning capacity at the time of the latest accident or disablement, but on the highest wage earned by the claimant in any of his employments between his first and latest injury or disability. More concretely, is an award against the last employer permissible where claimant’s earnings, following his latest disablement, exceed the wage which he was receiving when such latest injury occurred?
Agnes Crawley, while working as a beautician and hairdresser for Margaret Reuter, contracted an occupational disease, contact dermatitis. She became disabled in January of 1947 and, in connection with making awards for total and partial disability, the claimant’s average weekly wage was fixed at $56.83. In February, 1948, just about a year after her first exposure, the claimant obtained employment with the Park View Beauty Salon, hut, several months later, in August, she gave up this job because the skin condition from which she had previously suffered reappeared. Then, in October, 1948, she became a manicurist for the appellant Failla, but recurrence of the dermatitis, some six weeks later, forced her to quit work on November 14, 1948. Her average weekly wage while employed by the appellant amounted to $40.
Between the years 1947 and 1952, the claimant received a number of awards for disability, either total or partial as the evidence indicated, because of her condition of dermatitis. By a decision made in November of 1951, the board found that both Reuter and Failla (and their respective carriers) were equally liable for any liability subsequent to November 14, 1948 — when she left Failla’s employ—and awards on that basis appear *60 to have been made until March of 1953. However, by further decisions, handed down on March 23, 1953, it was determined that, while Failla was not liable for any reduced earnings, Reuter and her carrier were to pay the claimant, for the period from January 16, 1952 to March 18, 1953, at the rate of $12 a week.
Be that as it may, though, on October 22, 1954, the board again considered the matter and again concluded that the liability rested equally on both employers (and their carriers), even though the claimant’s earnings after her latest disablement might have exceeded the amount of wages which she had been receiving from Failla. More specifically, the board, after noting that the claimant had received a weekly wage of $40 while with Failla and that for .the period between January 2, 1952 and December 27, 1952 she had earned an average of $38.84 a week and from the latter date to January 31, 1953 an average of $41.02 a week, concluded that the claimant “ suffered a loss of earnings entitling her to a rate of $12.00 per week * * * to be paid one-half by the carrier in each case ”. Matter of Braunstein (307 N. Y. 296, supra) was cited to support the decision. About two and a half years later, in May of 1957, the board handed down a supplemental decision. Not changing the determination earlier made, it purported simply to furnish an additional ground for its earlier disposition; in this decision, the board declared that it “further finds” that in case of successive industrial accidents, each contributing to the claimant’s ultimate disability, ‘ ‘ the compensation payable for such disability shall be based on claimant’s highest average weekly wage in any of the contributing accidents and shall be apportioned in accordance with the contribution of each accident to the disability.”
On appeal, the Appellate Division affirmed these 1954 and 1957 decisions of the board, but on an entirely different theory. It was the court’s view that the award against the appellant was proper, on the ground that the claimant’s wage just before the latest injury amounted not to the $40 a week which she was receiving from Failla at that time, but to such sum plus $17.42, representing the amount which was being paid to her- (while with Failla) as compensation benefits in consequence ’ of her *61 first exposure.[1] Accordingly, concluded the Appellate Division, the award of $12 a week allowed by the board, when added to the claimant’s weekly earnings after her latest disablement — $38.84 for several months and $41.02 for the balance of the period involved — did not exceed the permissible limit fixed by subdivision 6 of section 15 of the Workmen’s Compensation Law.
The statute is clear that, although the compensation to which a claimant is entitled is 66%% of the difference between his average weekly wages at the time of the disability and his actual earnings thereafter in the same employment (Workmen’s Compensation Law, § 15, subd. 3, par. v; subd. 5-a), in no event may such compensation, when added to the decreased earnings, exceed “ the amount of wages ” being received by the employee “ at the time the injury occurred” (§ 15, subd. 6). This provision of the Compensation Law leaves no doubt that it is the amount of the claimant’s wages which measures the employer’s liability, and “ Wages,” section 2 explicitly recites, ‘ ‘ means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time ” the accident or disablement occurs (Workmen’s Compensation Law, § 2, subd. 9). No matter how liberally we would construe provisions of the Workmen’s Compensation Law, the term “ wages ” may not be stretched to include compensation benefits which were being paid by another employer on account of a prior disability. It follows, therefore, that the award against the appellant Failla, predicated as it was not only upon the wage which the claimant was receiving from him, but also upon the amount of compensation being paid to her by reason of the earlier exposure, may not be sustained. The claimant’s wages at the time of her disablement, while working for Failla, amounted to $40 a week and, consequently, she would be entitled *62 to an award from this appellant of not more than $1.16 a week for the period between January 2 and December 27, 1952 — since for those months her earnings averaged $38.84 a week — and to nothing from December 27, 1952 to March 18, 1953 — since during that time her average earnings came to $41.02 a week.
Nor does the statute empower the Workmen’s Compensation Board to adopt the rule, reflected in its supplemental, decision of May, 1957, that in case of successive industrial accidents, each contributing to claimant’s ultimate disability, “the compensation payable for such disability shall be based on claimant’s highest average weekly wage in any of the contributing accidents ”. Neither our decision in Matter of Messaros v. Goldman and Matter of Braunstein v. General Mar. Repair (307 N. Y. 296, supra) nor anything we there said supports such a proposition. In Messaros and Braunstein, where there were successive accidents, each contributing to the subsequent disability, we simply held that each of the employers was subject to an award based upon the wage, if higher, received by the claimant at the time of “ the latest injury.” (307 N. Y., at p. 300; see, also, Matter of Swirsky v. Brooklyn Ambulance Service, 3 N Y 2d 943.) The injury to which the court there referred was the final and cumulative result to which all of the accidents contributed. Only in such a case could the average weekly wage established for the last accident or disablement be used as the basis for determining the awards for disability as against all the accidents. The situation, however, is entirely different where, as here, the wage paid at the time of the latest disablement was considerably less than the earnings from the employment in which disability had been initially incurred.
To subject a later employer to an award on the basis of a higher salary which the claimant received during an earlier employment flies in the face of another specific statutory prohibition. Subdivision 7 of section 15, while providing that no claimant shall be denied compensation because of a previous disability for which he has been compensated, goes on to recite, “ provided, however, that an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the pre *63 vieras disability ”. It is clear, therefore, that the claimant’s awards against the appellant Failla must be computed by comparing her earnings after her latest disablement with the average weekly wage received from Failla while working for him. As the provision indicates, a claimant with a prior compensable disability may not receive compensation from a later employer for a later injury in excess of the compensation allowed for that injury when considered by itself.
As we have already noted, the awards against the appellant Failla may not, therefore, stand.
Disposition of Failla’s appeal does not, however, conclude the case. The liability of the first employer Margaret Reuter and her carrier still remains for resolution. The wages which the claimant received while working for Reuter averaged $56.83 a week, and, when she began working for Failla at the rate of $40 a week, Reuter (or her carrier) was required to pay compensation benefits which, as already indicated (supra, p. 61, n. 1), were erroneously paid at the rate of $17.42 a week, predicated upon a 50% arbitrary earning capacity.
Before the claimant began working for Failla, and at the time recurrence of her disablement forced her to quit his employment in November, 1948, Reuter’s liability had been established, apparently on the basis of a 50% earning capacity, resulting in the payments to the claimant at the $17.42 rate. From time to time down to the present awards, liability was found to exist upon the basis of a 50% apportionment. These facts necessarily invite further consideration of the principle of apportionment and suggest the advisability of further study of the question as to the degree of responsibility of the exposure which first caused the disablement.[2] Where an employer has been held responsible for compensation on account of an industrial disability, it is settled law that he will be held accountable for whatever disability may thereafter result. (See, e.g., Matter *64 of Anderson v. Babcock & Wilcox Co., 256 N. Y. 146, 149; Matter of Sherman v. Holland Furnace Co., 3 N Y 2d 860.) The employer may not, of course, be relieved of a liability once fixed and chargeable to him, and it has not been suggested that the first employer, Reuter herein, should be released. However, despite an alleged equivocal oral stipulation, the record before us leaves us in doubt as to whether adequate consideration has been given either to the principle of apportionment or to an equitable and just distribution of liability. Indeed, the evidence adduced all points to the conclusion that the claimant suffered a minimal exposure while in Failla’s employment, and the absence of substantial medical proof that such exposure contributed to her ultimate disability requires that the case be returned to the board.
The order should be reversed, with costs in this court and in the Appellate Division, and the matter remitted to the Workmen’s Compensation Board for further preceedings not inconsistent with this opinion.

. This $17.42 figure seems plainly incorrect. By reason of the statute (Workmen’s Compensation Law, § 15, subd. 3, par. v), the claimant was entitled only to two thirds of the difference between her wages from Reuter, of $56.83, and her wages from Failla, of $40, that is, $11.22 a week (or, by virtue of subdivision 6, to a minimum of $12), instead of the $17.42 awarded by the board and referred to by the Appellate Division to support its decision. Although we are told that this payment was made to supplement the $40 wage paid, by Failla5 it is quite clear that it was paid as a result of the 1947 exposure on the basis of an estimated 50% earning capacity.

. The Workmen’s Compensation Law is silent on the subject of the liability of the parties in eases of successive industrial accidents or disablements, and it is, perhaps, not amiss to observe that, as a result, doubt and perplexity have attended decision in many cases involving the apportionment of responsibility among such employers and carriers as to the proration of the compensation to be paid by them. Awareness of the problem may well prompt the Legislature to study it and, if found feasible, to enact appropriate legislation.