Dye, J. (dissenting).
In this appeal by our permission the parties have stipulated that the claimant’s disability was the result of two exposures to an occupational skin disease with equal liability. The initial disability occurred January 27, 1947 while claimant was in the employ of Margaret Reuter as an operator in a beauty salon, at which time her average weekly earnings amounted to $56.83. She had interim awards for temporary total and partial disability benefits and for reduced earnings in the sum of $17.42. She later took employment as a partially disabled person with this appellant, Charles Failla (doing business as Charles Beauty Salon). During this employment she was again exposed to the skin disease and was disabled. She filed a claim for compensation. Her average weekly wages in the second exposure were fixed at $40 per week. The claimant subsequently returned to employment from January 2, 1952 to December 27, 1952. She earned an average of $38.84 per week. From December 27, 1952 to January 31, 1953, she averaged $41.02 per week. Interim awards for temporary, total and partial disability have been made and paid. These awards are not now challenged.
We deal here only with the final awards for reduced earnings covering the period from January 16, 1952 to March 18, 1953 *65 at the mrnfrrnrm rate of $12, amounting to $732 which was charged equally against both employers and each carrier was directed to pay 50% thereof. It is the distribution of the payment of the reduced earnings award that is being disputed. Hartford, the carrier for Failla, the second employer, claims that at most it should be held liable only for the difference between $40 and $38.84 or $1.16 per week and not liable at all for the period when claimant earned $41.02.
The board rejected this contention, ruling that the claimant’s disability was due to both exposures equally and that as a result claimant suffered a loss of earnings entitling her to the minimum allowable rate of $12 per week, one half to be paid by each carrier (Matter of Braunstein v. General Mar. Repair, 307 N. Y. 296).
In this court the appellant carrier contends that the wages were the amounts paid by the last employer. It points to subdivision 9 of section 2 of the Workmen’s Compensation Law, which defines “wages” as “ the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident ” which, in this instance, was established at $40 per week (Workmen’s Compensation Law, § 14). However that may be as a general definition, it must be read in connection with the applicable statutes dealing with permanent partial disabilities affecting loss of earnings. In this instance, as we have said, we deal with a classified permanent partial disablement due to occupational disease attributable equally to two exposures.
Subdivision 6 of section 15 of the Workmen’s Compensation Law provides that in such situations compensation shall be paid in accordance with schedule rates, and then provides that “ In no event shall compensation when combined with decreased earnings or earning capacity exceed the amount of wages which the employee was receiving at the time the injury occurred”.
In Matter of Braunstein v. General Mar. Repair (supra, p. 300), we interpreted “ injury ”, as then used, as referring to the latest injury when there had been more than one injury; that as so read the quoted language means no more than this ‘ ‘ total compensation for disability caused by several compensable accidental injuries, plus earnings after the latest injury, cannot exceed earnings just before the latest injury ”. In that case *66 the hoard had found that the ultimate disability was attributable in part to the ’prior accident, but the earnings of the claimant thereafter and as decreased by the latest accident were nonetheless higher than they were at the time of the earlier accident. Because the prior accident contributed, we deemed the ultimate disability otherwise should be charged proportionately among all the employers. That, however, is not this case, but the principle is equally applicable here since we are concerned with the apportionment of an award for loss of earnings due to permanent partial disability resulting from two separate exposures to an occupational skin disease.
Here, we must remember, the appellant hired this claimant as a physically handicapped person, knowing she could not perform her normal duties as a hairdresser at that time. Because of such disability she was receiving a reduced earning award of $17.42 to supplement her salary of $40 a week so that her earning capacity should not be reduced as a result of this occupational disease.
In my view, including the payment for reduced earnings to fix her average weekly earning capacity at the time of her'last injury is not contrary to the Braunstein decision, nor do I think that subdivision 6 of section 15 is a limitation. The soundness of that approach is demonstrated by the fact that the claimant was hired as a partially disabled person earning $40 per week, but at the same time she was entitled to and did receive reduced earning payments in the amount of $17.42 attributable to her former employment. Hence, her real earnings at the time of her last injury were not $40 as the appellant would have her believe, but actually $57.42. Thus, in the language of the statute the award of $12 per week combined with the decreased earnings or earning capacity does not exceed the amount of wages which the employee was receiving at the time of her last injury. To now hold that claimant’s earnings should be determined by her actual cash wages alone would create an anomalous situation and, as I read it, contrary to the clear meaning of the statute. To limit the award to the wages actually paid by the employer at the time of the last injury, and which is an equally contributing cause of the accident, would be to relieve the last employer of all or most of the money contribution simply because the claimant’s wages were diminished as the *67 result of occupational disease for which, concededly, he is equally liable. Each carrier should pay one half of the minimum allowable rate of $12 per week.
The order of the Appellate Division should be affirmed, with costs.
Chief Judge Conway and Judges Desmond, Froessel, Van Voorhis and Burke concur with Judge Fuld; Judge Dye dissents in a separate opinion.
Order reversed, etc.