**Buddy C. JOHNSON**

v.

**S. D. WARREN, DIVISION OF SCOTT PAPER COMPANY et al.**

Supreme Judicial Court of Maine.

Argued June 12, 1981.

Decided July 20, 1981.

---

McTeague, Higbee & Tierney, Ralph L. Tucker (orally), Brunswick, for plaintiff.

Richardson, Tyler & Troubh, Ann H. Mohnkern (orally), Portland, for S. D. Warren.

Robinson & Kriger, Roland Beaudoin (orally), Portland, for Employers' Ins. of Wausau.

Before McKUSICK, C. J., GODFREY and CARTER, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

In this successive injury case, the Workers' Compensation Commission awarded compensation for total incapacity at a rate less than two thirds of the employee's average weekly wage at the time of his second and final injury. From the judgment entered on the pro forma decree of the Superior Court, Cumberland County, affirming the Commission's decision, Buddy Johnson, the employee, appeals. The employer, S. D. Warren, Division of Scott Paper Company, cross appeals on the question: whether the commissioner who rendered the decision improperly admitted a transcript of medical testimony taken earlier in the proceeding before a different commissioner. We grant the employee's appeal, deny the employer's cross-appeal, and vacate the judgment of the Superior Court.

## I. *The Amount of Johnson's Compensation*

The Commission found that Buddy Johnson suffered two compensable injuries to his back during his employment with S. D. Warren. The first injury was sustained on July 30, 1975, in the course of pulling a bucket of boiler material. At that time S. D. Warren's carrier was Employers Mutual Liability Insurance Company of Wausau, appellee herein. Johnson twice missed work for several weeks as a result of the 1975 incident, both times receiving compensation by agreement.

The second injury was sustained on December 14, 1977, in the course of twisting open a jammed boiler valve. At this time S. D. Warren was self-insured. Johnson has not returned to work since the date of the second incident.

In March, 1978, Johnson filed a petition for further compensation against S. D. Warren/Employers Insurance of Wausau pursuant to 39 M.R.S.A. § 100 and a petition for award of compensation against S. D. Warren/Self-Insured pursuant to 39 M.R.S.A. §§ 51, 54. The petitions were consolidated for hearing before the Commission.

In a decision issued August 21, 1980, the commissioner granted both petitions. He found that following the second injury Johnson was and still is totally disabled; that both the 1975 and the 1977 injuries contributed to this total disability; that any attempt to determine the extent to which each injury so contributed would be mere conjecture; and, therefore, that responsibility for Johnson's disability should be apportioned equally to each injury.

Johnson is content with the conclusions of the commissioner described thus far. His grievance centers on the commissioner's subsequent actions. On the petition for award, the commissioner ordered S. D. Warren/Self-Insured to pay 50% of the two thirds of the average weekly wage earned by Johnson at the time of the 1977 injury, or 50% of two thirds of $330.51, or $110.17 per week. On the petition for further compensation, however, he ordered S. D. Warren/Employers Insurance of Wausau to pay 50% of two thirds of the average weekly wage earned by Johnson at the time of the 1975 injury, or 50% of two thirds of $241.10, or $80.37 per week.

It is Johnson's contention in this appeal that, no matter how the responsibility for his compensation be apportioned, the amount of that compensation should have been based *solely* on his 1977 average weekly wage; as the decree stands, he is unjustifiably deprived, so he claims, of nearly $30.00 compensation weekly.

For several reasons, we agree with Buddy Johnson: First, if only the second of Johnson's 1975 and 1977 injuries had been work-related, and together each injury had contributed to total incapacity, there is no doubt that compensation for that incapacity would be based on his 1977 average weekly wage. 39 M.R.S.A. § 54. *See, e. g. Wadleigh v. Higgins*, Me., 358 A.2d 531, 532–533 (1976). Second, so long as S. D. Warren's insurance coverage both in 1975 and 1977 was carried by the same entity, an identical result would follow—even if the two injuries had arisen, as they did, out of and in the course of Johnson's employment with S. D. Warren. 39 M.R.S.A. § 2(2)(F). *Cf. Gullifer v. Granite Paving Co.*, Me., 383 A.2d 47, 50 (1978). Third, the result espoused by Johnson is prompted by 39 M.R.S.A. § 104–B and the observations we made concerning that provision in *Robbins v. Bates Fabrics, Inc.*, Me., 412 A.2d 374 (1980).

Section 104–B provides:

> If an employee has sustained more than one injury while employed by the same employer and if the employer was insured under this Act by one carrier when the first injury took place and insured under this Act by a 2nd carrier when the last injury took place and if there *is* a dispute between the two carriers as to their financial responsibility concerning each injury, the carrier providing coverage at the time of the last injury shall be responsible to the employee for payment of weekly compensation benefits for the last injury and shall have the right of subrogation against the first insurance carrier for the amount of the first carrier's financial responsibility for the employee's first injury. (emphasis ours)

In *Robbins* we explained that Section 104–B was

> remedial legislation ... [which] was imported into the Workers' Compensation Act *to permit recovery of full benefits by the employee against the second insurer in a case where the first insurer, for whatever reason, is not made a party to the proceedings before the Commission* .... 412 A.2d at 378 (emphasis added).

Where, as here, the first insurer is made a party to the proceedings before the Commission, the second insurer's right of subrogation does not come into play as such and section 104–B is not directly applicable. However, as we also noted in *Robbins*, bringing both insurers before the Commission at one time

> *[by] the simultaneous filing of two petitions ... [is] the proper procedural mechanism to secure apportionment between the two insurers*, when and if an employee's single indivisible disabling condition causally results from the combination of two successive injuries. 412 A.2d at 377 (emphasis added)

To allow Johnson "recovery of full benefits ... against the second insurer" (i. e. recovery of 100% total compensation based on the average weekly wage at the time of the second injury) *only if* "the first insurer, for whatever reasons, is not made a party to the proceedings" would be to penalize his use of "the proper procedural mechanism" for securing apportionment.

The Workers' Compensation Act is to be liberally construed in favor of the employee. 39 M.R.S.A. § 92; *Gilbert v. Maheux*, Me., 391 A.2d 1203, 1205 (1978). Where and how Johnson sustained his first injury and whether and why S. D. Warren decided to abandon its prior insurance carrier are fortuities, which we believe do not here warrant overall reduced compensation to the injured employee. More importantly, not to set aside the pro forma decree in this case would be to disregard the clear implications of 39 M.R.S.A. § 104–B.

We must answer one further question: If, as we conclude, the decree must be

set aside, should total compensation based on Johnson's 1977 average weekly wage be split evenly between the insurer at the time of the first injury and the employer/self-insurer at the time of the second injury, or should Employers Insurance of Wausau continue to pay its fifty per cent share based on Johnson's 1975 average weekly wage and S. D. Warren, self-insurer, make up the difference?

New York apparently has elected the first alternative. E. g. Anderson v. Babcock & Wilcox Co., 256 N.Y. 146, 175 N.E. 654 (1931); Meszaros v. Goldman, 307 N.Y. 296, 121 N.E.2d 232 (1954); Swirsky v. Brooklyn Ambulance Service, 3 A.D.2d 785, 160 N.Y.S.2d 21 (1957). And, adoption of the first alternative can be inferred from the decisions of other apportionment jurisdictions. E. g. Employers' Casualty Co. v. United States Fidelity & Guaranty Co., 214 Ark. 40, 214 S.W.2d 774 (1948); Quinn v. Automatic Sprinkler Co., 50 N.J.Super. 468, 142 A.2d 655 (1958); Mund v. Farmers' Cooperative, Inc., 139 Conn. 338, 94 A.2d 19, 22 (1952). These courts, however, that have followed the first alternative of equal apportionment of liability did not address the second alternative.

Employers Insurance of Wausau argues that an employee's rights become vested and his employer's obligations fixed at the moment the employee sustains a compensable injury; therefore, it is claimed that, subsequent to the 1975 injury, Johnson was entitled to compensation, and Wausau was obliged to pay it, for any future incapacity causally related to, or partially contributed by, the 1975 injury using Johnson's 1975 average weekly wage rate, without regard to what Johnson's average weekly wage might be at the time of the 1977 injury. In support of this argument, Wausau cites cases which either observe or imply, on the one hand, that our Workers' Compensation

law is elective and, therefore, the rights and obligations arising under it are contractual, and, on the other hand, that a retroactive legislative change of such vested rights can unconstitutionally impair the obligation of contract. E. g. Gauthier's Case, 120 Me. 73, 113 A. 28 (1921). See also Barrett v. Herbert Engineering, Inc., Me., 371 A.2d 633, 635 n. 1 (1977); Reggep v. Lunder Shoe Products Co., Me., 241 A.2d 802, 804 (1968).

To the extent that we have relied on 39 M.R.S.A. § 104–B in concluding that compensation for Johnson's earning incapacity should be based on his average weekly wage at the time of his 1977 injury, Wausau's position is not without merit. Section 104–B became effective October 24, 1977, well after the date of Johnson's first injury. P.L. 1977, c. 368. To infer from Section 104–B that Wausau is obliged to pay its share of Johnson's compensation based on his 1977 average weekly wage instead of his 1975 average weekly wage would arguably be to sanction a constitutionally impermissible "retroactive legislative change" in a fixed contractual obligation. But see Mund v. Farmers' Cooperative, Inc., supra, 139 Conn. at 344, 94 A.2d at 22 (obligation not fixed at date of first injury because first injury continues to act in the present as an equal and concurrent cause of disability).

Although we agree with Wausau that Section 104–B should not be read to change its obligations respecting compensation which became fixed at the time of the 1975 injury, we do not rest our decision on constitutional underpinnings. Apportionment is a judicially-created doctrine, Kidder v. Coastal Construction Co., Inc., Me., 342 A.2d 729 (1975), and subrogation an equitable right, Robbins v. Bates Fabrics, Inc., supra at 379. Both are designed to do simple justice where liability can be traced to more than one party.[1] From the mo-

---

1. An apportionment rule based upon these principles is well demonstrated by the approach taken by the Minnesota Supreme Court in Callahan v. Swift and Company, 293 Minn. 375, 196 N.W.2d 303 (1972). In that case, disability was also due to more than one industrial occurrence with more than one insurer involved. The Court rejected the equal distribution of liability figured as of different dates of injuries adopted by the Commissioner in the instant case and divided the responsibility more in accordance with principles of equity which seek to do justice for all parties. In that case, the maximum benefits allowable by law at the

ment that Johnson sustained a compensable injury during Wausau's term of coverage, that insurer was saddled with two significant financial risks: (1) the risk that Johnson might after recovery suffer a recurrence of the 1975 injury, in which case compensation would be based on his 1975 average weekly wage rate, *e. g. Gullifer v. Granite Paving Co., supra,* and (2) the risk that he might, as here, sustain a new injury resulting in a disability to which the first injury has causally contributed. It was never the purpose of our apportionment doctrine in the second or successive injury context to compound the risk already inherent in the first insurer's obligations by importing into that doctrine the uncertainties of a changing average weekly wage. Section 104–B allows and equity requires that, so far as the first insurer's obligations are concerned, Johnson's average weekly wage remain fixed at its 1975 level.

To the second insurer, the apportionment doctrine still results in a substantial financial benefit. Without that doctrine, S. D. Warren as insurer at the time of the most recent injury could have been liable for 100% of the compensation due. *See Kidder v. Coastal Construction Co., Inc., supra* at 731 n. 1. With the apportionment doctrine, as herein adopted, S. D. Warren is liable for much less than total compensation.

## II. *The Admission of the Prior Testimony*

When hearings were begun on Johnson's petitions, Dr. Ira Stockwell testified before the first commissioner who took the case. Before making any findings of fact, that commissioner retired and Johnson's case was transferred to a second commissioner. Although the latter heard testimony from other medical witnesses, he also admitted over S. D. Warren's objection a transcript of Dr. Stockwell's testimony.

■ S. D. Warren is correct in its assertion that admission of the transcript was error. By Commission regulation, the Maine Rules of Evidence apply in all hearings before the Commission. *See* Workers' Compensation Commission, Rules and Regulations, Rule 15. Because the transcript was offered for the truth of the matter asserted, it was hearsay. M.R.Evid. 801(c). Because there was neither an inquiry nor a showing that Dr. Stockwell was unavailable to re-testify before the second commissioner, the "former testimony" exception to our hearsay rule did not apply. M.R.Evid. 804(b)(1).

■ We do not agree, however, that the error in admitting the transcript justifies remand or reversal. The substance of Dr. Stockwell's testimony was that Johnson injured his back in 1975 by pulling a heavy bucket, that he injured it again in 1977 by twisting a jammed valve, and that, while both injuries contributed to his present incapacity, he was unable to apportion causal responsibility between them.

S. D. Warren's efforts at the hearings were primarily focused on attempting to show that there was no valve-twisting incident in 1977, or, if there was, that it did not amount to a new injury contributing to Johnson's current disability. To these ends, S. D. Warren introduced testimony that Johnson did not mention a valve-twisting incident to two doctors and a nurse who, as Dr. Stockwell, had seen him shortly after

time of the first injury were in the amount of $32.00 per week. At the time of the second injury, maximum benefits were $60.00 per week. The first carrier's liability for the employee's incapacity was determined to be 85%, while that of the second carrier was placed at 15%. The Court ruled that the employee was entitled to $60.00 per week. Considering that the employee's resulting injury was causally related to the first and second accidents in the order of 85% to 15%, the Court viewed as proper equitable distribution of the compensation rights and duties between the parties in the following manner: the first insurer to pay

the maximum allowable under the law at the time of the first injury, or the sum of thirty-two ($32.00) dollars, and the second insurer to put up the difference of twenty-eight ($28.00) dollars, both amounts producing the benefits to which the employee was entitled by law. Again, in *Pearson v. Foot Transfer Company*, 301 Minn. 489, 221 N.W.2d 710 (1974), the Minnesota Court used equitable principles in denying an employee recovery of higher benefits from the first employer, where the second employer's release from liability was due to the employee's failure to give timely notice of the accident to the second employer.

December 14, 1977. However, examination of the entire record reveals that the substance of Dr. Stockwell's testimony was corroborated by Johnson's own account of what happened on December 14, 1977,[2] by the deposition of the orthopedic doctor who subsequently operated on Johnson,[3] and by several medical reports, including Dr. Stockwell's own, which were admitted without S. D. Warren's objection.[4]

Although it appears from the decree that the commissioner considered Dr. Stockwell's transcript along with all the other evidence in the case, it is impossible to tell what weight, if any, he accorded that transcript in reaching his ultimate decision. S. D. Warren did not move for specific findings of fact and conclusions of law pursuant to 39 M.R.S.A. § 99 in order to determine the question of weight. *See Sutherland v. Pepsi-Cola Bottling Co.*, Me., 402 A.2d 50, 52 (1979). In the absence of a section 99 motion, we do not hesitate to follow our past practice of deleting the offending hearsay and examining the remaining evidence to see if it can rationally support the commissioner's decree. *See Prescott v. Old Town Furniture Co.*, 151 Me. 11, 16, 116 A.2d 413, 415 (1955); *Larrabee's Case*, 120 Me. 242, 244, 113 A. 268, 269 (1921). On the record before us, admission of Dr. Stockwell's testimony was harmless error.

The entry will be:

Johnson's appeal sustained.

S. D. Warren's cross appeal denied.

The pro forma decree of the Superior Court is set aside with directions that the case be remanded to the Commission in order to amend the amount of Johnson's compensation. Johnson should be paid 100% total compensation based solely on his average weekly wage at the time of his most recent injury. His compensation should therefore equal ⅔ of $330.51, as adjusted, with liability to be apportioned thus:

(1) S. D. Warren/Employers Insurance of Wausau to pay 50% of ⅔ of Johnson's average weekly wage at the time of his earlier injury, or 50% of ⅔ of $241.10 and

2. For example, in response to the question whether anything unusual happened to him on December 14, 1977, Johnson declared: "I injured my back opening a boiler blowdown valve." The water level in the boiler, according to Johnson, had risen dangerously high. In acting to meet the emergency, Johnson said, "[I] found the [blowdown] valve was jammed, and when I put further pressure on it, it snapped open and twisted me with it." Thereupon he immediately felt "[s]harp lower back pain and pain into ... [his] rectum and legs." Compared to the 1975 incident, Johnson explained, the December, 1977, incident resulted in burning, as opposed to throbbing pain and was both more extensive and more intractable.

3. Dr. Dotter, who performed a spinal fusion on Johnson, said that Johnson's underlying condition was degeneration of the lumbosacral joint; that any sudden twisting or unnatural force applied to that joint will cause it to be symptomatic; that both the 1975 and the 1977 injuries, which were described to Dr. Dotter by Johnson, were capable of aggravating Johnson's underlying condition; and that he was unable medically to apportion the relative causal contributions of either injury to Johnson's ultimate disability.

4. Dr. Stockwell examined Johnson six days after the injury, December 20, 1977. In pertinent part his report states:

Chief complaint of low back pain. Opening valve at work on 12/14/77 and since that time the pain has exacerbated.

Dr. Jerry Cole, having examined Johnson on February 10, 1978, stated in a letter to Dr. Stockwell:

He was apparently referred to Dr. Wilson by the company physician at S. D. Warren for complaints of recurrent low back pain radiating to both posterior thighs, apparently related to a re-injury at work on December 14, 1977. He describes having to open a heavy blow-down valve on several occasions that day, and his symptoms have been worse since that time . . . .

A post-operative discharge summary from New England Baptist Hospital, signed by Dr. Dotter and dated January 23, 1979, states in pertinent part:

This 43-year-old gentleman has had a long history of back pain. The original problem started with lifting a heavy load in 1975. He developed the back pain in the lumbosacral area which radiated down to his right knee. He did reasonably well on conservative management, and was back to work shortly thereafter. In 1977 he reinjured his back. The pain was not radicular down his right side and left side, although the right side has always been worse.

(2) S. D. Warren/Self Insured to pay the remainder.

So ordered.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All concurring.