**Alford v 72nd Tenants Corp.**

2024 NY Slip Op 30822(U)

March 12, 2024

Supreme Court, New York County

Docket Number: Index No. 653335/2018

Judge: Debra A. James

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. DEBRA A. JAMES                    PART    59

*Justice*

-----------------------------------------------------------------------------X

REBECCA ALFORD,

                              Plaintiff,

                        - v -

72ND TENANTS CORPORATION, BROWN HARRIS
STEVENS RESIDENTIAL MANAGEMENT, LLC, and
BOARD OF DIRECTORS OF 72ND TENANTS
CORPORATION,

                              Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 653335/2018 |
| MOTION DATE | 06/08/2023 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230

were read on this motion to/for          SUMMARY JUDGMENT(AFTER JOINDER          .

ORDER

    ORDERED that the motion of defendants for summary judgment is granted, and the complaint is dismissed in its entirety, with costs and disbursements to defendants as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

    ORDERED that the Clerk is directed to enter judgment accordingly.

**653335/2018   ALFORD, REBECCA vs. 72ND TENANTS CORPORATION**
**Motion No.  002**

**Page 1 of 34**

<u>DECISION</u>

Plaintiff Rebecca Alford ("Plaintiff"), a tenant shareholder, brings this action against the 72nd Tenant Corporation ("the Co-op"), Brown Harris Stevens Residential Management ("Brown Harris") and the Board of Directors of 72nd Tenant Corporation ("the Board"). She alleges that the roof area adjacent to her apartment ("2nd Floor Roof Area") is a terrace and is part of the leased premises under her proprietary lease agreement. Plaintiff asserts multiple claims, including breach of contract against the Co-op for allegedly failing to maintain the building and the 2nd Floor Roof Area in good repair.

The Co-op and the Board (together, "Defendants") move for summary judgment pursuant to CPLR § 3212. Plaintiff opposes the motion.

Defendants' motion is granted for the reasons stated below.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

<u>The Co-op</u>

The Co-op is a residential cooperative corporation that owns the apartment building located at 125 East 72nd Street in Manhattan ("the Building"), and Brown Harris is the managing agent for the Building (NYSCEF Doc No. 92, Mazzola affirmation, exhibit D, Proprietary Lease, p. 3; NYSCEF Doc No. 231, Mazzola affirmation, exhibit G, Derlaga deposition transcript at p. 9:4-14). The Co-op is governed by its by-laws, and its Board has, in pertinent part,

[* 2]

discretionary power to "prescribe the manner of maintaining and operating the apartment building of the corporation, and any other premises acquired by the corporation by purchase or otherwise" (NYSCEF Doc No. 92, Mazzola affirmation, exhibit D, Proprietary Lease, p. 4-5 and NYSCEF Doc. No. 91, By-Laws, p. 7). The Board may also change the house rules applicable to the Building whenever it deems necessary, which are binding on all tenants of the Building (NYSCEF Doc. No. 91, id., pp. 7-8).

The Co-op leases its apartments to tenant shareholders who have the exclusive right to possess their apartments (NYSCEF Doc. No. 91, p. 14). The Co-op uses a form of proprietary lease adopted by the Board (id., p. 14). All proprietary leases are executed in the same form, except for the statement related to the number of shares of stock owned by each shareholder (id.).

Apartment 2B

On November 3, 1993, Plaintiff and her late husband purchased 535 shares from the Co-op for apartment 2B ("the Apartment") (NYSCEF Doc. No. 92, Proprietary Lease; NYSCEF Doc. No. 154, Assignment; NYSCEF Doc. No. 150, affidavit of Plaintiff, ¶ 6). Adjacent to the Apartment is the 2nd Floor Roof Area, the subject of the dispute in this action, which Floor Roof Area is located above a commercial space on the first floor of the Building. (NYSCEF Doc. No. 231 [replacing illegible NYSCEF Doc. No. 95], deposition transcript of Brown Harris property manager John

[* 3]

Derlaga, at p. 89:14-20). Defendants contend that none of the 535 shares allocated to apartment 2B, (which apartment has the lowest square footage and the least amount of shares allocated to any of the B line apartments), account for the 2nd Floor Roof Area (NYSCEF Doc. No. 88, Mazzola affirmation, ¶ 9; NYSCEF Doc. No. 97, Plan of Cooperative Organization, at p. 31).

The 2nd Floor Roof Area consists of a large flat square with a long section leading to a fire escape in case of an emergency (NYSCEF Doc. No. 150, affidavit of Plaintiff at ¶ 7). There are two access points to the 2nd Floor Roof Area: one from Plaintiff's dining room and the other through the egress that is part of the fire escape (NYSCEF Doc. No. 231, id., p. 35:4-11). Although other shareholders can access the 2nd Floor Roof Area through the egress in instances of emergency, Plaintiff, otherwise, has exclusive access to the space (NYSCEF Doc. No. 150, at ¶¶ 7, 22, 27; NYSCEF Doc No. 231, at p. 39:7-9, p. 40:23-25, p. 41:2).

Plaintiff attests that the 2nd Floor Roof Area, which she refers to as "her terrace," was the main inducing factor for her and her late husband's purchase of the Apartment, and that she has used the terrace since 1993 (NYSCEF Doc. No. 96, Mazzola affirmation; NYSCEF Doc. No. 96, Plaintiff's tr at p. 28:8-25 and p. 29:2-9; NYSCEF Doc. No. 150, id.). On the square portion of the 2nd Floor Roof Area, she has hosted parties, installed light fixtures, and kept plants and outdoor furniture (NYSCEF Doc. No.

150, id., at ¶ 34). The Co-op also replaced a spigot she used to water her plants (id., ¶ 31).

Plaintiff contends that the Co-op has always acknowledged her right to use the 2nd Floor Roof Area as a terrace and has continuously referred to the space as a "terrace" (id., ¶¶ 36-42). Plaintiff also attests that the 2nd Floor Roof Area was historically used as a terrace by previous shareholders as well, as evidenced by the built-in flower beds and the glass mirrors hung alongside the lattice fences at the time of her purchase in 1993 (id., ¶¶ 23-25).

The Proprietary Lease

Plaintiff and her deceased husband are the assignees of the proprietary lease for the Apartment (NYSCEF Doc No. 154, Closing Statement; NYSCEF Doc. No. 150, affidavit of plaintiff, ¶ 6).

The proprietary lease agreement states in pertinent part that the lessee,

> "upon paying the rent and performing the covenants and complying with the conditions on the part of the Lessee to be performed and complied with, as herein set forth, shall, at all times during the terms hereby granted, quietly have, hold and enjoy the apartment without any let, suit, trouble or hinderance from the Lessor"

(NYSCEF Doc. No. 92, p. 9, Lease, Article I, ¶ 8). A "lessee of an apartment embracing a penthouse, balcony or terrace or a portion thereof shall have and enjoy the exclusive use of the balcony or terrace appurtenant to such apartment subject to all the applicable

[* 5]

provisions of this lease and to the use of such balcony or terrace by the Lessor to enable it to fulfill its obligations hereunder" (id., Lease, Article I, ¶ 7). If the apartment includes a balcony or terrace, the lessee is "obligated to keep such terrace or balcony clean and free from ice or snow, and to provide and maintain proper drainage therefor," and "shall be responsible for the maintenance and repair thereof" (id., p. 15, Article II, Lease ¶ 7).

As to repairs, the proprietary lease states in pertinent part:

"The Lessor shall keep in good repair the foundations, sidewalks, gardens, walls, (except ceilings, floors, interior walls of apartments), supports, beams, *roofs, terraces*, gutters, fences, cellars, chimneys, laundry and storage space, entrances and street and court doorways, public halls, public stairways, windows, fire escapes, elevators, pumps and tanks, and all pipes and electrical conduits, together with all plumbing, heating, and other apparatus intended for the general service of the building, except those portions of any foregoing which it is the duty of the Lessee to maintain and keep in good repair as provided in paragraph Seventh of Article II hereof . . . [t]he covenants by the Lessor herein contained are subject, however, to the discretionary power of the Board of Directors of the Lessor to prescribe from time to time the manner of maintaining and operating the building and what services and attendants are proper, and subject to the further proviso that there shall be no diminution or abatement of rent or maintenance charge or other compensation for the failure by the Lessor to perform any service or obligation or for interruption or curtailment of service, when such failure, interruption or curtailment shall be due to accident or to alterations or repairs desirable or necessary to be made, or to inability or difficulty in securing supplies or labor, to some other cause not negligence on the part of the Lessor . . ."

(id., p. 6, Lease, Article I, Lease ¶ 1 and 2. The lease further provides, in pertinent part that:

"No diminution or abatement of rent, or other compensation, shall be claimed or allowed for inconvenience or discomfort arising from the making of repairs or improvements to the building or its equipment and appliances, (except in the case of damage so extensive as to render the apartment untenantable as provided in Article I, paragraph Third) or from any action taken to comply with the law, ordinance or order of a governmental authority.

(id., p. 20, Lease, Article II, ¶ 16).

Construction Performed on the 2nd Floor Roof Area

The evidence in the record shows that the repair work on the 2nd Floor Roof Area commenced in 2018 and was completed in 2020.

In January 2018, the Co-op's professional engineer, Gilsanz Murray Steficek LLP ("GMS"), inspected the commercial space below the Apartment and discovered significant cracks and damage to the concrete slab supporting the 2nd Floor Roof Area (NYSCEF Doc No. 101, Mazzola affirmation, exhibit M). The Co-op subsequently retained GMS to oversee the construction of the commercial space and the slab repair of the 2nd Floor Roof Area (NYSCEF Doc. No. 105, Mazzola affirmation, exhibit Q).

To carry out the construction work per the GMS drawings and oversight, the Co-op hired a contractor, Pali Building Restoration, Inc. ("Pali") (NYSCEF Doc. Nos. 102 and 103, Mazzola affirmation, exhibits N and O). Rick Kramer Architects ("RKA") was tasked to oversee, among other things, the roof and parapet repair work on the 2nd Floor Roof Area, (NYSCEF Doc No. 106, Mazzola

[* 7]

affirmation, exhibits R). RKA's role in the project was later expanded by the Co-op to include the Building's façade.

Before the repair project began, the Co-op applied for a construction permit with the New York City Department of Buildings ("DOB") (NYSCEF Doc. Nos. 110-111, Mazzola affirmation, exhibits V and W), which was not issued for approximately four months (NYSCEF Doc. No. 114, Mazzola affirmation, exhibit Z). Once issued by DOB, the construction permit was subject to Pali updating its proof of insurance (id.).

The Co-op also filed an application for approval of the planned alterations with the New York City Landmarks Preservation Commission ("LPC") because the Building is landmarked (NYSCEF Doc. No. 113, Mazzola affirmation, exhibit Y).

Once the construction work on the 2nd Floor Roof Area began on July 25, 2018, the Co-op faced many delays. At the inception of the project, John Derlaga, the Building's manager, reached out to Pali and expressed his frustration that there were not enough workers on site (NYSCEF Doc. Nos. 122-124, Mazzola affirmation, exhibits HH, II and JJ). Additionally, GMS determined, through multiple probes, that the damage was much more serious than initially anticipated.

When GMS inspected the slab repair work that was performed in September, October and December of 2018, it concluded that Pali's work did not conform to drawing specifications, its welder was not

[* 8]

licensed and the welds were of poor quality (NYSCEF Doc. Nos. 125-127 & 131, Mazzola affirmation, exhibits KK, MM QQ). In December 2018, RKA also submitted an amendment to the ongoing repair project in the Building and explicitly stated that all work was to be performed *only* when the exterior temperature was at 45 degrees (NYSCEF Doc. No. 129, Mazzola affirmation, exhibit OO).

In February 2019, the Co-op expanded the repair work to include the Building's roof. Specifically, Derlaga informed all shareholders by letter that the construction work in the Building would expand to include the replacement of the parapets and the floor of the 2nd Floor Roof Area, repairs to the commercial space, and repairs to the Building's roof, with all work due to be completed by the end of the summer (NYSCEF Doc. No. 132, Mazzola affirmation, exhibit RR). During that time, Pali was going out of business and wrapping up its operations causing the Co-op to retain Pofi Construction Corporation ("Pofi") as the new contractor for the repair work (NYSCEF Doc. No. 231 at pp. 201, 207).

The 2nd Floor Roof Area repairs were completed by February 2020, excluding the installation of the pavers because Plaintiff alleged that the existing pavers contained lead (NYSCEF Doc Nos. 136-137, Mazzola affirmation, exhibits VV and WW, Seth Roye tr pp 133-134). However, the construction project was temporarily shut down in mid-March of 2020 due to the COVID-19 pandemic (NYSCEF Doc. No. 138, Mazzola affirmation, exhibit XX).

[* 9]

When work resumed in July 2020, Pofi installed the pavers on the 2nd Floor Roof Area after testing confirmed that they did not contain lead (NYSCEF Doc Nos. 139-140, Mazzola affirmation, exhibits YY and ZZ). By September 2020, the 2nd Floor Roof Area repair project was completed except for punch list items (NYSCEF Doc No. 141, Mazzola affirmation, exhibit AAA).

During the time that the construction project was taking place on the 2nd Floor Roof Area, the Co-op informed Plaintiff of the damage identified by GMS and directed her to cease using the space (NYSCEF Doc. Nos. 102-103, Mazzola affirmation, exhibits N and O). At one point when the repairs were being made, the conditions from the construction caused water accumulation on the 2nd Floor Roof Area, which the Co-op ordered Pali to address the very next day (NYSCEF Doc Nos. 120 and 142 respectively, Mazzola affirmation, exhibits FF and BBB).

Procedural Posture of the Case

Plaintiff commenced this case against the Co-op and Brown Harris only on July 30, 2018 (NYSCEF Doc. No. 93, Mazzola affirmation, exhibit E, Complaint). The Co-op and Brown Harris moved to dismiss the complaint on August 20, 2018 (NYSCEF Doc. No. 94, Mazzola affirmation, exhibit F). On December 11, 2018, the court dismissed the fourth cause of action for breach of fiduciary

duty against the Board[1] and the fifth cause of action for negligence against Brown Harris and the Co-op (NYSCEF Doc No. 213, Simoni affirmation, exhibit I). The court also dismissed the complaint against Brown Harris in its entirety (id.).

On April 15, 2019, the parties filed a stipulation to allow Plaintiff to file a supplemental summons and amended complaint, adding the Board as a party (NYSCEF Doc No. 58). On April 16, 2019, Plaintiff served a supplemental summons and amended complaint, asserting almost the same exact causes of action as in her original complaint (NYSCEF Doc No. 89, Mazzola affirmation, exhibit A, amended complaint). However, Plaintiff added a cause of action for breach of the warranty of habitability against the Board as her fourth cause of action and a breach of fiduciary duty against the Co-op as her fifth cause of action (id.). On May 16, 2019, Defendants answered the amended complaint (NYSCEF Doc No. 90, Mazzola affirmation, exhibit B). Defendants now move for summary judgment. Plaintiff opposes.

Both parties have submitted affidavits from experts on the issue of whether the duration of the Co-op's repair project on the 2nd Floor Roof Area was reasonable. In support of their motion for summary judgment, Defendants submitted an affidavit from Benjamin

---

[1] Although the Board was not named as a party in the initial complaint, Plaintiff asserted a cause of action against the Board in the body of the complaint.

M. Cornelius (Cornelius), who is licensed as a professional engineer, civil engineer, and structural engineer (NYSCEF Doc No. 145, Cornelius affidavit). Mr. Cornelius avers that although the repairs on the 2nd Floor Roof Area took 33 months to complete, the time was reasonable: the project arose out of unforeseen conditions, the extent of the damage came to light as the project progressed, a contractor needed to be selected for the work, and the Co-op had to secure the necessary permits from both the DOB and LPC. Additionally, the Building expanded the repair project at a time when the construction industry in New York City was busy (id., p. 5). Plaintiff submitted a rebuttal affidavit from Douglas R. Korves (Korves), who is a registered architect licensed to practice in New York. Mr. Korves attests that the time to complete the 2nd Floor Roof Area repair project was unreasonable (NYSCEF Doc. No. 179, Korves affidavit, pp. 9-10). Per Mr. Korves, the Co-op should have performed an emergency repair of the under slab and the 2nd Floor Roof Area, and not couple this repair project with other work in the Building because it resulted in an unreasonable delay (id.).

## DISCUSSION

A party moving for summary judgment under CPLR § 3212 "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d

320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (<u>Vega v Restani Constr. Corp.</u>, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]). Once the moving party has met this prima facie burden, the burden shifts to the non-moving party to furnish evidence in admissible form sufficient to raise a material issue of fact (<u>Alvarez</u>, 68 NY2d at 324). The moving party's "[f]ailure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (<u>id.</u>).

## A. Standing

As a preliminary matter, Defendants argue, for the first time, that Plaintiff lacks standing to bring this lawsuit because the 2nd Floor Roof Area is not part of the demised premises. Pursuant to CPLR § 3211 (e), the failure to raise the defense of standing in an answer or in a pre-answer motion to dismiss constitutes a waiver of the defense (<u>Eida v Bd. of Mgrs. of 135 Condominium</u>, 166 AD3d 561, 561 [1st Dept 2018]; <u>Dougherty v City of Rye</u>, 63 NY2d 989, 991 [1984]). Nonetheless, "a waiver may be retracted 'by assertion of the defense in connection with the summary judgment.... an unpleaded defense may not only be invoked to defeat a motion for summary judgment, but in the absence of surprise or prejudice to, or objection by, the opposing party, it may also serve as the basis for an affirmative grant of such relief'" (<u>Nikita Banks v Peace of Mind Realty</u>, 2019 NY Slip Op 32689[U],*

*13-14 [Sup Ct, NY County 2019] [citations omitted]; see also Sullivan v American Airlines, Inc., 80 AD3d 600, 602 [2d Dept 2011] ["an unpleaded defense may serve as the basis for granting summary judgment in the absence of surprise or prejudice to the opposing party"]; BMX Worldwide v Coppola N.Y.C., Inc., 287 AD2d 383, 384 [1st Dept 2001]). "[P]rejudice or surprise is ameliorated however, when it is shown that the plaintiff has had a full and fair opportunity to respond and oppose the defense being asserted in connection with summary judgment" (Antwi v HVT, Inc., 24 Misc 3d 1250[A], 2009 NY Slip Op 51937[U], *11 [Sup Ct, Bronx 2009] [citations omitted]).

Here, Defendants failed to raise the defense of standing in their answer and their motion to dismiss, therefore waiving it (see NYSCEF Doc. No. 90, answer to amended complaint; NYSCEF Doc. No. 210, Simoni affirmation in opposition to instant motion, exhibit F). Defendants thus waived the affirmative defense of standing but retracted their waiver by asserting it for the first time in their motion for summary judgment. As Plaintiff fully opposed the issue, both parties having an opportunity to address such defense in their papers, the court finds that Plaintiff is not prejudiced by the court's consideration of the issue. In any event, Defendants' affirmative defense of standing fails because defendants have not prima facie established that the 2nd Floor Roof

Area is not part of Plaintiff's demised premises, as discussed _infra_.

Turning to the issue on whether the 2nd Floor Roof Area is a part of the demised premises, "[a] lease agreement, like any other contract, essentially involves a bargained-for exchange between the parties" (_Rowe v Great Atl. & Pac. Tea Co._, 46 NY2d 62, 67 [1978]). "It is the proprietary lease which creates a landlord-tenant relationship between the shareholder and the cooperative corporation" (_Blumenfeld v Stable 49, Ltd._, 62 Misc 3d 1208[A], 2018 NY Slip Op 51958[U], *23-24 [Sup Ct, NY County 2018] [citations omitted]). "The relationship between the shareholder/lessees of a cooperative corporation and the corporation is determined by the certificate of incorporation, the corporation's bylaws and the proprietary lease" (_Fe Bland v Two Trees Mgt. Co._, 66 NY2d 556, 563 [1985]). Thus, ordinary contract principles apply in interpreting those documents (_see Kralik v 239 E. 79th St. Owners Corp._, 5 NY3d 54, 57 [2005]; _see also George Backer Mgt. Corp. v Acme Quilting Co._, 46 NY2d 211, 217 [1978] [stating in pertinent part that "a lease is subject to the rules of construction applicable to any other agreement"]). Courts have previously held that the offering plan and the lease determine the extent of tenant's rights to the roof (_see Fairmont Tenants Corp. v Bratt_, 162 AD3d 442 [1st Dept 2018]; _1050 Fifth Ave. v May_, 247 AD2d 243, 243-244 [1st Dept 1998]).

"In cases of contract interpretation, it is well settled that 'when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms'" (South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277 [2005] [citations omitted]). "'The best evidence of what parties to a written agreement intend is what they say in writing'" (see Greenfield v Philles Records, 98 NY2d 562, 569 [2002] [citations omitted]). If the terms of a contract, however, are "susceptible of two reasonable interpretations," then the contract is deemed ambiguous (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014] [internal quotation marks and citation omitted]).

Applying the law to the facts at bar, there is an issue of fact as to whether the 2nd Floor Roof Area is part of Plaintiff's demised premises. The proprietary lease describes the Apartment as "all that certain space on the second floor of the building, known as Apartment 2-B, and herein referred as the apartment" (NYSCEF Doc No. 92, p. 3). The proprietary lease, however, does not describe what "all that certain space" encompasses or describe the number of rooms or other areas that the Apartment contains. The language is thus "sufficiently ambiguous to permit the introduction of extrinsic evidence to discern the parties' intent as to whether the [P]laintiff has the exclusive right to use" the 2nd Floor Roof Area (Koretz v 363 E. 76th St. Corp., 178 AD3d 445, 446 [1st Dept 2019]).

To give the "proprietary lease meaning," the court may review the Co-op's offering plan submitted by Defendants (Fairmont Tenants Corp, 162 AD3d at 442; see also 1050 Fifth Ave., 247 AD2d at 243). There is no ambiguity in the Co-op's offering plan (NYSCEF Doc. No. 97, Plan of Cooperative Organization dated September 8, 1964) that there is no "terrace" or "balcony" allocated to Plaintiff's Apartment. Specifically, Schedule C of the offering plan shows only the penthouse has a terrace as denoted by "Ter" next to its description (NYSCEF Doc No. 97, p. 34). According to the offering plan submitted, the 2nd Floor Roof Area is not allocated to the Apartment (see Fairmont Tenants Corp, 162 AD3d at 442).

Plaintiff, however, argues that there is no evidence that the offering plan submitted by Defendants is valid or that it was filed with the New York State Attorney General's Office as required by 13 NYCRR 17.4 (e).

In response, Defendants argue that the "ancient document rule" applies, making the document self-authenticating. However, looking at the document itself, it is not clear to the court, from the first page or the content, that the copy of the offering plan that was submitted was filed and approved by the Attorney General. Mr. Mazzola's affirmation only identifies the exhibit as the "Co-op's Offering Plan" without providing any further description (NYSCEF Doc No. 88, Mazzola affirmation, p. 14).

Notwithstanding Defendants' argument, the court is unable to apply the ancient document rule here. "Under the 'ancient document' rule, a record or document which is found to be more than 30 years old, and which is proven to have come from proper custody and is itself free from any indication of fraud or invalidity, 'proves itself'" (Tillman v Lincoln Warehouse Corp., 72 AD2d 40, 44 [1st Dept 1979] [citations omitted]). "If the genuineness of an ancient document is established, it may be received to prove the truth of the facts that it recites" (id. at 45). However, the genuineness of the document has not been established, as Defendants failed to submit an affidavit from someone with personal knowledge to authenticate the Co-op's offering plan as a business record or provide other proof of custody (Dodge v Gallatin, 130 NY 117, 133-134 [1891]; Thistlethwaite v Thistlethwaite, 200 Misc 64, 66 [Sup Ct, Monroe County 1950]). Accordingly, Defendants have failed to demonstrate that the 2nd Floor Roof Area is not part of the demised premises, and therefore Defendants do not prevail on their lack of standing defense.

## B. Breach of Contract Against the Co-Op

In her first cause of action, Plaintiff alleges a breach of contract against the Co-op. Plaintiff's main allegation is that the Co-op breached its obligation toward her by performing construction work on the 2nd Floor Roof Area in a "harassingly slow

manner," preventing her from using it for an unreasonably long period of time (NYSCEF Doc. No. 89, Amended Complaint, at p. 4). Defendants argue that Plaintiff cannot demonstrate a breach of the terms of the proprietary lease even if the 2nd Floor Roof Area were part of the demised premises.

To prevail on a cause of action for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) plaintiff's performance thereunder, (3) the defendant's breach, and (4) resulting damages (Harris v Seward Park Hous. Corp., 79 AD3d 425, 426 [1st Dept 2010]).

There is no dispute that a proprietary lease agreement for the Apartment exists between Plaintiff and the Co-op. In her Amended Complaint, Plaintiff identifies numerous provisions in the proprietary lease to show the Co-op's obligations to make repairs for which she alleges there was a breach. Under the provisions (lease, Article I, section 1), as cited by Plaintiff, the Co-op "shall keep in good repair" "terraces," "public halls," and "fire escapes" The Co-op must, under section two of Article I,[2] also "maintain and manage the building as first-class apartment building and shall keep the elevators and the public halls. . .clean." Under Article II, section 12, of the lease, the Co-op is

---

[2]Although Plaintiff cites the second section of "Article II" in her Amended Complaint, this quoted provision is in fact located under Article I.

also to "restore the apartment to its proper and usual condition", after making repairs.

Plaintiff alleges that she meets the second element of breach of contract because she has paid the Co-op for the 535 shares allocated to the Apartment and has performed all her obligations under the proprietary lease. She argues that she has established the third element of the cause of action as well because the Co-op breached the provisions of the proprietary lease that she identified, in undertaking repairs on the 2nd Floor Roof Area in a "harassingly slow matter," precluding her from using the area for an unreasonably long time.

Plaintiff's breach of contract claim fails even assuming that the 2nd Floor Roof Area were part of Plaintiff's demised premises. First, the provisions cited by Plaintiff in her Amended Complaint essentially state that the Co-op is responsible for, among other things, maintaining terraces in good repair. The evidence in the record show that the Co-op met that obligation by undertaking repairs that were required under the agreement; made repairs on the 2nd Floor Roof Area/"terrace" after it discovered that there were significant cracks and damage to the 2nd Floor Roof Area and the commercial space below; and thoroughly investigated and executed the repairs in consultation with the licensed engineers and architects.

Plaintiff admits that the Co-op made repairs as obligated by the proprietary lease once the damage on the 2nd Floor Roof Area was discovered. Nonetheless, Plaintiff challenges the time in which the repairs were made and argues that the Co-op violated the proprietary lease by "not timely engaging in the repairs and then elongating the repair process and not returning the pavers to the Terrace until October 13, 2020 . . . ." and by failing to "promptly restore as mandated by the Lease." However, in support of this argument, Plaintiff fails to cite to any provisions under the proprietary lease that required the Co-op to carry out the repairs within a specific time. Not one of the provisions cited by Plaintiff in her Amended Complaint set a "reasonable" time in which repairs must be completed. In fact, the proprietary lease does not set any such standards. Plaintiff's cause of action for breach of contract merely amounts to a disagreement about the amount of time in which the Co-op made the repairs, not a breach of contract.

Although the parties have submitted evidence from experts who disagree on whether the construction project on the 2nd Floor Roof Area took an unreasonably long time, this evidence is irrelevant as terms of the proprietary lease contains no provisions concerning the reasonableness of the time for repairs. In fact, under the lease, Plaintiff's right to use the "terrace" would be subject to the Co-op's repair and maintenance responsibilities. Moreover, the

lease terms explicitly absolve the Co-op from any liability for the inconvenience or discomfort arising from the repairs.

Finally, Plaintiff alleges that the Co-op breached the proprietary lease because it violated the New York City Housing Maintenance Code (HMC), including HMC § 27-2009.2, by failing to maintain the Building and failing to post the Safe Construction Bill of Rights. This argument does not prevail because Plaintiff lacks standing to enforce such violations under the Housing Maintenance Code. Under controlling case law, when the DOB issues notices of violations "against the Co-op, plaintiff[] [is] under no obligation to respond to them," and a private litigant, "lack[s] standing to enforce the DOB's order to correct the violation" (Wachtel v Park Ave & 84th St., Inc., 180 AD3d 545, 546 [1st Dept 2020] [citations omitted]). Additionally, the HMC § 27-2009.2 (g) explicitly states that the provisions of the section are to be "enforced by the department or department of buildings." Consequently, only the New York City Department of Housing Preservation and the Department of Buildings can enforce the Co-op's violations of the Housing Maintenance Code (see also Delgado v New York City Hous. Auth., 66 AD3d 607, 608 [1st Dept 2009] ["Only the Commissioner of the New York City Department of Housing Preservation and Development is authorized to seek such relief or other sanctions and remedies for violations of the Housing Maintenance Code (NY City Charter § 1802 [1]"]).

## C. The Covenant of Quiet Enjoyment against the Co-op

In her second cause of action, Plaintiff alleges a breach of the covenant of quiet enjoyment against the Co-op (NYSCEF Doc. No. 89, Amended Complaint, at p. 5). She alleges that the Co-op unreasonably performed repair work on the 2nd Floor Roof Area precluding her from its use and ousting her from her own "terrace" (id.). Defendants argue that there was no ouster because the repairs were made with Plaintiff's consent (NYSCEF Doc No. 147, Defendants' Memorandum of Law, p. 14).

"To make out a prima facie case of breach of the covenant of quiet enjoyment, a tenant must establish that the landlord's conduct substantially and materially deprived the tenant of the beneficial use and enjoyment of the premises" (Jackson v Westminster House Owners Inc., 24 AD3d 249, 250 [1st Dept 2005]). "There must be an actual ouster, either total or partial, or if the eviction is constructive, there must have been an abandonment of the premises by the tenant" (id.).

Assuming the 2nd Floor Roof Area is a part of the demised premises, the Co-op's repairs of the space do not amount to an eviction. First, there was no constructive eviction because there is no evidence that Plaintiff abandoned the demised premises. However, Plaintiff argues that she was ousted from the 2nd Floor Roof Area due to the repairs made by the Co-op. "[A]lterations to the leased premises, made with the consent of the tenant, do not

amount to an eviction, no matter how extensive or the degree of interference with the tenant's occupancy" (Jackson, id.). The Co-op's entry to the 2nd Floor Roof Area was made pursuant to the right the Co-op reserved in the proprietary lease, which was signed and consented by Plaintiff. For these reasons, Plaintiff's second cause of action is dismissed.

### D. The Breach of Warranty of Habitability Against the Co-op and the Board of Directors

For her third and fourth causes of action of breach of the warranty of habitability against the Co-op and the Board, respectively, Plaintiff alleges that Defendants failed to maintain the Co-op in good repair as required by Real Property Law § 235-b. She alleges that Defendants failed to timely cure the conditions and thus prevented her from using the 2nd Floor Roof Area, as well as compromised the fire egress through the 2nd Floor Roof Area for a long period of time (NYSCEF Doc No. 89 at pp. 3, 6-7). Defendants argue that the loss of an amenity like a terrace is not a breach of warranty.

Section 235-b of the Real Property Law, provides in pertinent part:

"In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental

to their life, health or safety. When any such condition has been caused by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties."

Further, Real Property Law § 235-b applies to proprietary leases (see Matter of 12-14 E. 64th Owners Corp. v Hixon, 130 AD3d 425, 425 [1st Dept 2015]). Additionally, under the Multiple Dwelling Law, and HMC § 27-005, the Co-op is required to maintain the premises in good repair.

Nonetheless, "[t]he landlord is no absolute insurer of services which do not affect habitability nor is it a guarantor of 'every amenity customarily rendered in the landlord-tenant relationship'" (Suarez v Rivercross Tenants' Corp., 107 Misc 2d 135, 139 [App Term, 1st Dept 1981], quoting Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 327 [1979]). "[T]he implied warranty protects only against conditions that materially affect the health and safety of tenants or deficiencies that 'in the eyes of a reasonable person … deprive the tenant of those essential functions which a residence is expected to provide'" (Solow v Wellner, 86 NY2d 582, 588 [1995] [citation omitted]).

As a preliminary matter, Plaintiff's breach of warranty of habitability claim against the Board fails because "section 235-b only applies to the parties to the lease" (Adler v Ogden CAP Props., LLC, 42 Misc 3d 613, 622 [Sup Ct, NY County 2013], affd 126 AD3d 544 [1st Dept 2015]). Since the Board is not a party to

the proprietary lease, the fourth cause of action is dismissed against such defendant.

Assuming the 2nd Floor Roof Area were part of the leased premises, the Co-op did not breach the implied warranty of habitability. While the Co-op is responsible for maintaining the Building in good repair, there are no allegations by Plaintiff that the Apartment was uninhabitable or that it did not serve the essential function that it was expected to serve. Instead, Plaintiff's claim involves the uninhabitable condition of the 2nd Floor Roof Area while it was under repair. "[A] terrace that is safe and suitable for plaintiff's own exclusive, outdoor use is an amenity, not an essential function that the co-op must provide" (Musey v 425 E. 86 Apts. Corp., 154 AD3d 401, 405 [1st Dept 2017]). Thus, even if the 2nd Floor Roof Area were part of the demised premises as a terrace, it would constitute an amenity and it would not be an essential function of the Apartment that the Co-op must provide.

There is also no evidence that the conditions caused by the repairs were dangerous, hazardous or detrimental to Plaintiff's life, health or safety. The evidence preponderates that the conditions on the 2nd Floor Roof Area for which Plaintiff is suing were a direct result of necessary repairs undertaken by the Co-op to fulfill its obligations pursuant to the proprietary lease and to eliminate any hazardous conditions that the damage imposed.

These conditions thus "d[o] not fall within the purview of a breach of the warranty of habitability, especially where said renovations will inure to the benefit of the respondent-shareholders by protecting their investments in a properly maintained building" (315-321 E. Parkway Dev. Fund Corp. v Wint-Howell, 9 Misc 3d 644, 648 [Civ Ct, Kings County 2005]). Further, the evidence in the record shows that, for her safety, Plaintiff was informed to not use the 2nd Floor Roof Area while it was being repaired, and when water accumulated, the Co-op ordered the contractor to remedy the issue (NYSCEF Doc No. 120 [e-mail dated August 6, 2018 from plaintiff to Derlaga] and 142 [e-mail dated August 7, 2018 from Derlaga to contractor], respectively).

As to Plaintiff's claim related to the fire egress located on the 2nd Floor Roof Area, she "individually lacks standing to maintain claims based on purported fire and building code violations in the common areas of the building (involving access to the fire escape/roof area of the building, and inspection of the building's sprinkler system [. . . ] [s]ince such claims involve injury to the corporation, they can only be asserted derivatively on behalf of the corporation" (White v Gilbert, 2012 NY Slip Op 32042[U], *23-24 [Sup Ct, NY County 2012]). Here, the evidence submitted shows that the DOB issued the Co-op a violation for failing to provide unobstructed exit passageway and directed it to correct the issue (NYSCEF Doc No. 174, affidavit of

[* 27]

plaintiff, exhibit 24). Notwithstanding the dispute on whether the 2nd Floor Roof Area is part of Plaintiff's demised premises, there is no dispute that the fire egress is a common area of the Building that other shareholders may access in case of a fire. Such a claim is thus derivative and Plaintiff lacks standing to maintain it individually based on a purported fire and a building code violation.

Although Plaintiff cites the decision of the Appellate Term, First Department, in Israel Realty LLC v Shkolnikov, for the proposition that Defendants breached the warranty of habitability, the facts of such case is distinguishable from those at bar. In Israel Realty LLC v Shkolnikov, 59 Misc 3d 148[A], 2018 NY Slip Op 50812[U] [App Term, 1st Dept 2018]), the appeals panel held that there was a breach of habitability because the tenant was unable to use the patio area that was nearly twice the size of the interior apartment, and thus an essential function that the residence was expected to provide (id. at *2). Further, the scaffolding work in Israel Realty LLC affected the air, light and ventilation inside the apartment posing potential threats to the health and safety of the tenant (id. at *2). Plaintiff has submitted no evidence that such infiltration occurred in the instant case.

For all the foregoing reasons, Defendants' motion to dismiss Plaintiff's third and fourth causes of action is granted.[3]

### F. The Sixth Cause of Action for Negligence Against the Co-op [4]

For her sixth cause of action, Plaintiff alleges that the Co-op had a duty to maintain the Building (including the 2nd Floor Roof Area) and to undertake repairs promptly and lawfully, which they allegedly failed to do (NYSCEF Doc No. 89 at p. 8). Plaintiff contends that such failure caused her to lose the opportunity to sell the unit and the construction project damaged her property, such as her plants and planters. Defendants argue, among other things, that the claim is duplicative of her breach of contract claim.

To prevail in a negligence claim, a plaintiff must demonstrate "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof" (Akins v Glens Falls City School Dist., 53 NY2d 325, 333 [1981]). When a negligence claim "[i]s fundamentally no

---

[3] In her fifth cause of action, Plaintiff alleges a breach of fiduciary duty against the Co-op on the basis that the Co-op ignored her requests to timely cure the conditions on the 2nd Floor Roof Area precluding her from its use (NYSCEF Doc No. 89 at p. 7). The court already dismissed Plaintiff's breach of fiduciary duty against the Co-op when it decided Defendants' motion to dismiss (NYSCEF Doc No. 50, Court's Decision and Order).

[4] As stated supra, this court previously dismissed all the claims against Brown Harris. Consequently, the court will only address the sixth cause of action in relation to the Co-op.

more than a breach of contract claim, and, absent the allegations of a duty owed by defendant independent of the contract (the proprietary lease), a valid cause of action is not stated" (Wapnick v Seven Park Ave. Corp., 240 AD2d 245, 247 [1st Dept 1997]; see also Baker v 16 Sutton Place Apt. Corp., 2 AD3d 119, 121 [1st Dept 2003]). Further, courts have held that "there is no cause of action for 'negligent performance of [a] contract' (Wapnick, 240 AD2d at 247).

Here, Plaintiff's alleges that the Co-op negligently made repairs on the 2nd Floor Roof Area. Assuming the 2nd Floor Roof Area is part of the leased premises, Plaintiff's negligence claim is based on the same factual allegations as those on her breach of contract claim. As the Co-op's duty to Plaintiff to make repairs arises solely under the proprietary lease and seeks the same damages, the claim is duplicative and barred by her claim for breach of the proprietary lease.

## G. The Seventh Cause of Action for Negligence Against the Board

For her seventh cause of action, Plaintiff alleges that the Board was negligent because it did not undertake prompt repairs in the Building, including the repair work on the 2nd Floor Roof Area (NYSCEF Doc No. 89 at p. 8). She argues that such failure caused her to lose her opportunity to sell the unit and the construction project damaged her property. Defendants move to dismiss this

cause of action on the same basis as their challenge to the sixth cause of action.

Defendants' motion to dismiss Plaintiff's seventh cause of action is granted. The business judgment rule is the legal standard that applies in reviewing the Board's decisions made within their authority, as "business judgment must rest with the corporate directors" (Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530, 539 [1990] [internal quotation marks and citations omitted]; see also 40 W. 67th St. v Pullman, 100 NY2d 147, 149-150 [2003] ["the business judgment rule is the proper standard for judicial review when evaluating decisions made by residential cooperative cooperations"]).

> "[T]he business judgment rule prohibits judicial inquiry into actions of corporate directors 'taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.' So long as the corporation's directors have not breached their fiduciary obligation to the corporation, 'the exercise of [their powers] for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient.'"

(Matter of Levandusky, 75 NY2d at 537-538 [citations omitted]).

Here, the evidence shows that the Co-op's actions through the Board's decisions concerning the repair project on the 2nd Floor Roof Area were in accordance with the provisions in the proprietary lease and the Co-op's bylaws. The actions taken were a proper exercise of the Board's business judgment because it is within the discretionary power of the Board to prescribe "the manner of

[* 31]

maintaining and operating the building and what services and attendants are proper" (NYSCEF Doc. No. 92, p. 4-5; see also NYSCEF Doc No. 91, p. 7). The evidence before this court establishes that the building-wide renovation project was conducted after damage was found to exist on the 2nd Floor Roof Area and the commercial space below. The record at bar further shows that the repairs made were necessary because the concrete slab damage was serious and presented potential danger to not only Plaintiff, who was using the 2nd Floor Roof Area, but also to anyone in the retail space below. Nor is there is any dispute that the project was approved by the Board pursuant to the Co-op's bylaws, and the repairs thus made to benefit the collective interest of the shareholders, including Plaintiff.

There is no evidence in the record to indicate, nor does Plaintiff argue, that the Board's decisions were not in furtherance of the common and general interest of the corporation or that they were made in bad faith. Instead, the evidence shows that the repairs made to the 2nd Floor Roof Area, the commercial space below, and the roof of the Building were necessary, thoroughly investigated and recommended by GMS or RKA. The multiple reports generated by GMS and RKA demonstrate the seriousness of the damage, the challenges that the Co-op faced in making such repairs, and the steps it took to ensure that the repairs were being carried out. "So long as the board acts for the purpose of the cooperative,

within the scope of its authority and in good faith, courts will not substitute their judgment for the board's" (Matter of Levandusky, supra, 75 NY2d at 538).

Plaintiff does not dispute that the Board had the discretion to decide how to undertake repairs. Instead, Plaintiff argues that on their motion, under Matter of Levandusky, defendants bear the burden of establishing, as a matter of law and fact, that in undertaking and executing the repairs, the Board acted reasonably. The court disagrees with plaintiff's interpretation, in that the Court of Appeals in the Matter of Levandusky held that, although the "reasonableness standard has much in common with the [business judgment standard it] adopt[ed]", the business judgment standard is "preferable" because (1) rather than requiring the board to demonstrate that its decision was reasonable, the business judgment standard requires the shareholder to demonstrate breach of the board's fiduciary duty, and (2) the business judgment standard does not require the court to evaluate the merits or wisdom of the Board's decision, and instead gives deference to the Board's business judgment (Matter of Levandusky, at 539). Contrary to Plaintiff's arguments, the business judgment standard, not the reasonableness test, governs the Board's decision, and the Levandusky court reasoned that "the prospect that each board decision may be subjected to full judicial review hampers the

effectiveness of the board's managing authority" (id. at 540; see also 40 W. 67th St. Corp., 100 NY2d at 150).

The evidence thus shows that the Board acted within the scope of its authority, in good faith, and for the purpose of the cooperative when it made the repairs in the Building. This evidence is not rebutted by the Plaintiff.

20240312181021DJAMESDE1FA39CA1A64035960C8F9A32CCFDA6

| 3/12/2024 | |
|-----------|--|
| **DATE** | **DEBRA A. JAMES, J.S.C.** |

| CHECK ONE: | ☒ CASE DISPOSED | | ☐ NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |